

Jean Kwon, Esq. (SBN: 256456)
Joshua Phelps, Esq. (SBN: 259067)
LAW OFFICE OF JEAN KWON, APLC
3700 Wilshire Blvd., Suite 405
Los Angeles, CA 90010
Telephone: (213) 480-0348
Facsimile: (213) 480-0350

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| TAY JAEYEUN CHO,<br><br>          Plaintiff,<br><br>vs.<br><br>M&M PROPERTIES, INC., *AKA*, MM PROP INC; GRACE KUH; MYUNG HEE LEE; AND DOES 1 THROUGH 100<br><br>          Defendant | Case No.: 2:14-bk-25120-ER<br>CHAPTER 7<br>ADVERSARY CASE NO.<br><br>COMPLAINT TO DETERMINE NON DISCHARGEABILIT OF DEBT |

Plaintiff, Tay Jaeyeun Cho, a creditor and party in interest in the above-referenced

bankruptcy case, hereby files his complaint to determine non-dischargeability of debt under 11

U.S.C. § 523, and in support thereof alleges as follows:

## I.

## __JURISDICTION__

1.    This Court has jurisdiction over the subject matter of this complaint as a core

1

On January 22, 2014, a first amended complaint was filed in Los Angeles Superior Court. A true and correct copy of the State Court Amended Complaint is attached hereto as Exhibit 1.

8. Plaintiff is informed and believes that the Defendant KUH is an individual residing in the County of Los Angeles, California. Plaintiff is informed and believes that Defendant KUH is a principal, shareholder, partner, member and alter-ego of the other defendants in this action including defendants M&M PROPERTIES, INC. (collectively referred to as "DEFENDANTS".)

9. The State Court Complaint alleges that Defendant owes Plaintiff sums totaling $34,092.00 plus pre-judgment interest and attorney fees by contract. Plaintiff entered into a written agreement with the Defendants, entitled Independent Contractor Agreement ("Agreement"), a copy of which is attached as Exhibit 2.

10. Debtor made none of the agreed payments, therefore the Plaintiff filed the State Court Complaint.

11. Debtor's Chapter 7 proceeding was filed on August 6, 2014, 13 days after the request for default was filed with the State Court and 2 days prior to the notice of ruling was filed by the Plaintiff. Currently there is a status conference scheduled for February 26, 2015, regarding the automatic stay from the bankruptcy case. Concurrently with the filing of this adversary complaint, Plaintiff is moving this Court for relief from the automatic stay so that the state court action can proceed.

12. Plaintiff alleges that such intentional, tortious conduct by the Debtor as alleged in the State Court Complaint is non-dischargeable under the provisions of 11 U.S.C. § 523 providing for exception of discharge.

3

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

## IV.

## FIRST CLAIM FOR RELIEF

### (Fraud and Deceit against M&M Properties Inc., KUH and Does 1 through 100)

13. Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 12 as though fully set forth herein.

14. On or about November 11, 2011, Debtor, through false pretenses, false representations, concealment and/or actual fraud, acted to induce Plaintiff to enter into written agreement for valuable consideration. Had Plaintiff been informed by Debtor of the true facts, including Debtor's intent not to pay the monies owed by Defendant, Plaintiff would not have entered into said agreement and incurred to losses attributable to Debtor. Based upon false and misleading statements and concealments of Debtor, Plaintiff earned monies owed by Debtor under written agreement.

15. Plaintiff is informed and believes and thereon alleges that the representations contained in the written agreement were materially false with respect to the Debtor's willingness to fulfill the terms and conditions of the agreements upon which Plaintiff reasonably relied. Plaintiff is further informed and believes that at the time Debtor made the false statements to Plaintiff, she knew them to be false, fraudulent and/or deceptive, and made them with the specific intent to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance thereon and to enter into the written agreement. Plaintiff is further informed and believes that Debtor has

4

no good faith, reasonable or actual expectation or belief that she could perform her obligations under the agreement, as specified therein.

16. At the time the above misrepresentations and material omissions were made, Plaintiff was ignorant of their falsity, believed them to be true, and relied on them. This reliance was reasonable because Debtor actively misrepresented, suppressed, concealed and failed to disclose the truth.

17. As a direct and proximate result of Debtor's false, fraudulent and/or deceptive acts, Plaintiff has sustained damages in an amount according to proof at trial.


## V.

## <u>SECOND CLAIM FOR RELIEF</u>

## (Fraudulent Concealment Against M&M Properties, KUH and Does 1 through 100)

18.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 17 as though fully set forth herein.

19.    On or about November 11, 2011, in the City of Los Angeles, defendants KUH, individually and on behalf of M&M as its officer, principal, partner, and/or member, represented to plaintiff that if plaintiff was to engage in certain real estate sales activities in the name of the broker regarding certain Properties, which would earn Defendants broker commissions, Defendants would pay Plaintiff 90% of the gross commission after the close of escrow of the Properties located at: (1) 1214 3rd Ave. Los Angeles (APN 5081-020-013); (2) 131 No. Ardmore

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Ave. Los Angeles (APN 5517-022-020); and (3) 739 So. Lorraine #304, Los Angeles (APN 5090-031-047).

20.     In reliance on said representations and inducements, Plaintiff entered into a written agreement with Defendants, entitled Independent Contractor Agreement ("Agreement") a copy of which is attached as Exhibit "2".

21.     Defendants knowingly concealed facts from Plaintiff in order to induce Plaintiff into entering into the Agreement.  Specifically, Defendants' inducement was based upon intentional concealment of the facts that Defendants did not intend to pay plaintiff 90% of the gross commission after the close of escrow of the Properties.

22.     In reliance on Defendants' concealments, Plaintiff entered into the Agreement and thereafter defendants repeatedly and continued to conceal their intention not to pay Plaintiff. Furthermore, in reliance on Defendants' misrepresentations, Plaintiff obtained the listing from the clients on the Properties, had them sign listing agreements for six (6) percent commission to Defendants and effected the sale of the Properties.

23.     During this time, Plaintiff had no knowledge of Defendants' concealments.

24.     The above concealments made be Defendants were material.

25.     When Defendants made these concealments, they made the concealments with the intention to deceive, defraud, and induce the Plaintiff to act in reliance on them, made by them in the manner alleged, or with the expectation that he would so act.

26.     Plaintiff, at the time these concealments were made by Defendants and at the time

6

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Plaintiff took the actions herein alleged, were ignorant of the Defendants' concealments. As a result of and in reliance on these concealments made by Defendants, Plaintiff has been damaged including without limitation economic injury, lost interest, and other general and specific damages, all in an amount to be proven at the time of trial in excess of $100,000.00.

27.    Had Plaintiff known the actual facts, they would not have taken such actions as entering into the contract, purchasing from Defendants, paying expenses, and other efforts necessary to the transactions. Plaintiff's reliance on Defendants' representations were justified because a reasonable person may be expected to believe such representations made by Defendants.

28.    Plaintiff detrimentally relied on Defendants' representations to be above-board and truthful in her dealings with defendant.

29.    As a proximate result of fraudulent conduct, concealments, misrepresentations of Defendants as herein alleged Plaintiff has been and continues to be damaged, including without limitation economic injury, lost interest, and other general and specific damages, including attorney fees, all in an amount to be proven at trial.

30.    The aforementioned conduct of defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants thereby depriving Plaintiff of legal rights or otherwise causing injury, and was despicable conduct done with oppression, fraud and malice which subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

7

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

## VI.

## THIRD CLAIM FOR RELIEF

### (Non-Dischargeability Pursuant to 11 U.S.C. § 523 (a)(2)(A) against Debtor)

31.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 30 as though fully set forth herein.

32.    Plaintiff alleges that the claims for relief arising from the actions and omissions of Debtor, as set forth herein, are non-dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A), in that they establish claims for money "obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Upon information and belief, such acts/omissions were undertaken in furtherance of a scheme to deprive Plaintiff of her money though false promises, fraudulent inducements, deception and actual fraud, which caused Plaintiff to enter into the written agreement with Debtor.

33.    As a result of such actions and omissions, Plaintiff has been damaged in an amount according to proof at trial, plus interest, costs and attorney fees which continue to accrue or in such amount as determined by the state court with jurisdiction over the State Court complaint.

34.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the above described claims for relief are non-dischargeable.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Debtor as follows:

8

---

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

## FIRST CLAIM FOR RELIEF

1.    For compensatory damages in an amount according to proof at trial, or in such amount as determined by the state court with jurisdiction over the State Court Complaint;

2.    For punitive and exemplary damages in an amount to be proven at trial;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

1.    For a determination that the claim(s) for relief set forth herein are non-dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A), in that they establish claims for money "obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Dated:  November 10, 2014

LAW OFFICES OF JEAN KWON

By: _____
Jean Kwon, Esq.
Attorney for Plaintiff Tay Jaeyeun Cho

9

# EXHIBIT 1

LAW OFFICES OF JAMES B. KROPFF
JAMES B. KROPFF (SBN 94056)
283 South Lake Ave., Suite 200
Pasadena, California 91101
Telephone: (626) 796-4070
Facsimile: (626) 796-4073

Eun J. Kwon, Esq. (256456)
LAW OFFICES OF EUN J. KWON
3700 Wilshire Blvd. Suite 405
Los Angeles, CA 90010
(213) 480-0348 Telephone
(213) 480-0350 Facsimile

Attorneys for Plaintiff
TAY JAEYEUN CHO

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

JAN 2 2 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR

## THE COUNTY OF LOS ANGELES-Central District- Unlimited

| | |
|---|---|
| TAY JAEYEUN CHO,<br><br>Plaintiff,<br><br>vs.<br><br>M&M PROPERTIES, INC. aka MM PROP INC.; GRACE KUH;  MYUNG HEE LEE; and DOES 1 through 100,<br><br>Defendants. | Case No. BC 519497<br>[Hon. Ruth Ann Kwan, Dept. 72]<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF**<br><br>1.  Breach Of Contract<br>2.  Common Count<br>3.  Fraud And Deceit<br>4.  Fraudulent Concealment<br>5.  Unjust Enrichment<br><br>**Demurrer Hearing Date: 02/11/2014** |

Plaintiff, TAY JAEYEUN CHO, hereby alleges:

1.     Plaintiff TAY JAEYEUN CHO, (hereinafter "Plaintiff" or "TAY JAEYEUN CHO") is an individual residing in Los Angeles County and at all relevant times was a duly licensed real estate salesperson in the State of California.

2.     Plaintiff is informed and believes that Defendant M&M PROPERTIES, INC. ("M&M PROPERTIES, INC.") is a real estate brokerage business entity doing business in the County of Los Angeles at 373 North Western Ave. #17, Los Angeles, California.

3.    Defendant GRACE KUH (hereinafter "KUH") is an individual residing in the County of Los Angeles, California. Plaintiff is informed and believes that Defendant KUH is a principal, shareholder, partner, member and alter-ego of the other defendants in this action including defendants M&M PROPERTIES, INC. (collectively referred to as "Defendants.")

4.    Defendant MYUNG HEE LEE (hereinafter "LEE") is an individual residing in the County of Los Angeles, California. Plaintiff is informed and believes that Defendant LEE is a principal, shareholder, partner, member and alter-ego of the other defendants in this action including defendants M&M PROPERTIES, INC. (collectively referred to as "Defendants.")

5.    Plaintiff is informed and believes that the defendants KUH, LEE and DOES 1 through 100 are the alter egos of the other defendants and that recognition of the corporate separateness of the defendants would be unfair and inequitable. There is such a unity of interest and ownership between the corporations and their equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. There would be an inequitable result if the acts in question are treated as those of the corporations alone. There has been commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. The corporate entities had and have inadequate capitalization, have disregarded corporate formalities, lacked of segregation of corporate records, and have the individual as their director and officer.

6.    Plaintiff does not know the true names or capacities, whether individual, corporate, associate, or otherwise of DOES 1-100, and therefore sue by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Defendants designated as a DOE is legally responsible in some manner for the events and happenings hereinafter referred to, and caused damages thereby as hereinafter alleged. Plaintiff will seek leave of the Court to amend this complaint to show the true names and capacities of the defendants, and each of them, designated as DOES when the same have been ascertained.

7.    The contractual and other obligations of the parties were entered into and or incurred in Los Angeles County, California.

**FIRST AMENDED COMPLAINT**

### FIRST CAUSE OF ACTION

#### FOR BREACH OF CONTRACT

#### Against All Defendants

8.    On or about November 11, 20011, Plaintiff entered into a written agreement with Defendants, entitled Independent Contractor Agreement ("Agreement") a copy of which is attached as exhibit "1".

9.    In that Agreement, among other provisions, Plaintiff was to engage in certain real estate sales activities in the name of the broker which would earn broker commissions and Defendants were to pay plaintiff 90% of the gross commission after the close of escrow of the properties located at: (1) 1214 3rd Ave. Los Angeles (APN 5081-020-013); (2) 131 No. Ardmore Ave., Los Angeles, Calif. (APN 5517-022-020); and (3) 739 So. Lorraine #304, Los Angeles, Calif. (APN5090-031-047) (collectively "the Properties").

10.    Plaintiff has complied with all obligations under the contract or was excused from compliance.

11.    On or about April 4, 2013, April 23, 2013, and June 27, 2013, respectively, escrows closed on the Properties located at: (1) 131 No. Ardmore Ave., Los Angeles, Calif. (APN 5517-022-020); (2) 1214 3rd Ave. Los Angeles (APN 5081-020-013); and (3) 739 So. Lorraine #304, Los Angeles, Calif. (APN5090-031-047).

12.    On or about those respective dates, Defendants received real estate brokerage commissions which were the subject of the Agreement with Plaintiff.

13.    On or about those respective dates, Defendants breached the Agreement with the Plaintiff by failing to pay Plaintiff the 90% of the gross commission after the close of escrow of the Properties.

14.    As a result thereof, Plaintiff has been damaged in the sum of $34,092.00 plus pre-judgment interest and attorney fees by contract.

### SECOND CAUSE OF ACTION

#### FOR COMMON COUNT—FOR SERVICES RENDERED

#### Against All Defendants

15.    Plaintiff realleges and incorporates by this reference each and all of the allegations contained in the foregoing paragraphs 1 through 14 as though fully set forth herein.

— 3 —

**FIRST AMENDED COMPLAINT**

16.    Within the last four years, at Los Angeles, California, Defendants became indebted to Plaintiff in the sum of $34,092.00 plus interest for money had and received by Defendants for the use and benefit of Defendants.

17.    Neither the whole or any part of this sum has been paid, although a demand therefore has been made, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of $34,092.00 with prejudgment interest and attorney fees.

## THIRD CAUSE OF ACTION
### FOR FRAUD AND DECEIT IN THE INDUCEMENT
Against defendants M&M Properties Inc., KUH and Does 1 through 100

18.    Plaintiff realleges and incorporates by this reference each and all of the allegations contained in the foregoing paragraphs 1 through 17 as though fully set forth herein.

19.    On or about November 11, 20011, in the City of Los Angeles, defendants Kuh, individually and on behalf of M&M as its officer, principal, partner, and/or member, represented to Plaintiff that if Plaintiff was to engage in certain real estate sales activities in the name of the broker regarding certain Properties, which would earn defendants broker commissions, defendants would to pay plaintiff 90% of the gross commission after the close of escrow of the Properties located at: (1) 1214 3rd Ave. Los Angeles (APN 5081-020-013); (2) 131 No. Ardmore Ave., Los Angeles, Calif. (APN 5517-022-020); and (3) 739 So. Lorraine #304, Los Angeles, Calif. (APN5090-031-047).

20.    In reliance on said representations and inducements, Plaintiff entered into a written agreement with Defendants, entitled Independent Contractor Agreement ("Agreement") a copy of which is attached as exhibit "1".

21.    Defendants knowingly misrepresented facts to Plaintiff in order to induce  plaintiff into entering into the Agreement.  Specifically, Defendants' inducement was based upon intentional misrepresentations that Defendants did not intend to pay plaintiff 90% of the gross commission after the close of escrow of the Properties.

22.    In reliance on Defendants' misrepresentations, Plaintiff entered into the Agreement and thereafter defendants repeatedly and continued to misrepresent their intention to pay Plaintiff.  Furthermore, in reliance on Defendants' misrepresentations, Plaintiff obtained the

— 4 —

**FIRST AMENDED COMPLAINT**

listing from the clients on the Properties, had them sign listing agreements for six (6) percent commission to Defendants and effected the sale of the Properties.

23.    During this time, Plaintiff had no knowledge that defendants' promises and assurances were false and misleading.

24.    The above representations made by Defendants were in fact false and the facts misrepresented were material.

25.    When Defendants made these representations, they knew that the representations to be false. Defendants made the false representations with the intention to deceive, defraud, and induce the Plaintiff to act in reliance on the representations made by them in the manner alleged, or with the expectation that he would so act.

26.    Plaintiff, at the time these representations were made by Defendants and at the time Plaintiff took the actions herein alleged, were ignorant of the falsity of defendants' concealments and representations and believed the representations as she knew them to be true. In reliance on these representations made by Defendants, Plaintiff has been damaged including without limitation economic injury, lost interest, emotional distress, and other general and special damages, all in an amount to be proven at the time of trial in excess of $100,000.00.

27.    Had Plaintiff known the actual facts, she would not have taken such actions as entering in to the Agreement and performing services for defendants. Plaintiff's reliance on Defendants' representations was justified because a reasonable person may be expected to believe such representations made by Defendants.

28.    As a proximate result of the fraudulent conduct, concealments, misrepresentations of Defendants as herein alleged Plaintiff was deprived of their profits, out-of-pocket expenses, payments made to Defendants and other resulting costs and losses including attorney fees according to proof.

29.    The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants thereby depriving Plaintiff of legal rights or otherwise causing injury, and was despicable conduct done with oppression, fraud and malice which subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff' rights, so as to justify an award of exemplary and punitive damages.

**FIRST AMENDED COMPLAINT**

## FOURTH CAUSE OF ACTION
### FOR FRAUDULENT CONCEALMENT
Against defendants M&M Properties Inc., KUH and Does 1 through 100

30.     Plaintiff realleges and incorporates by this reference each and all of the allegations contained in the foregoing paragraphs 1 through 29 as though fully set forth herein.

31.     On or about November 11, 20011, in the City of Los Angeles, defendants Kuh, individually and on behalf of M&M as its officer, principal, partner, and/or member, represented to plaintiff that if plaintiff was to engage in certain real estate sales activities in the name of the broker regarding certain Properties, which would earn Defendants broker commissions, Defendants would to pay Plaintiff 90% of the gross commission after the close of escrow of the Properties located at: (1) 1214 3rd Ave. Los Angeles (APN 5081-020-013); (2) 131 No. Ardmore Ave., Los Angeles, Calif. (APN 5517-022-020); and (3) 739 So. Lorraine #304, Los Angeles, Calif. (APN5090-031-047).

32.     In reliance on said representations and inducements, Plaintiff entered into a written agreement with Defendants, entitled Independent Contractor Agreement ("Agreement") a copy of which is attached as exhibit "1".

33.     Defendants knowingly concealed facts from Plaintiff in order to induce  Plaintiff into entering into the Agreement.  Specifically, Defendants' inducement was based upon intentional concealment of the facts that Defendants did not intend to pay plaintiff 90% of the gross commission after the close of escrow of the Properties.

34.     In reliance on Defendants' concealments, Plaintiff entered into the Agreement and thereafter defendants repeatedly and continued to conceal their intention not to pay Plaintiff. Furthermore, in reliance on Defendants' misrepresentations, Plaintiff obtained the listing from the clients on the Properties, had them sign listing agreements for six (6) percent commission to Defendants and effected the sale of the Properties.

35.     During this time, Plaintiff had no knowledge of Defendants' concealments.

36.     The above concealments made by Defendants were material.

37.     When Defendants made these concealments, they made the concealments with the intention to deceive, defraud, and induce the Plaintiff to act in reliance on them, made by them in the manner alleged, or with the expectation that he would so act.

38.     Plaintiff, at the time these concealments were made by Defendants and at the time Plaintiff took the actions herein alleged, were ignorant of the  Defendants' concealments.  As a

— 6 —

result of and in reliance on these concealments made by Defendants, Plaintiff has been damaged including without limitation economic injury, lost interest, and other general and special damages, all in an amount to be proven at the time of trial in excess of $100,000.00.

39.     Had Plaintiff known the actual facts, they would not have taken such actions as entering in to the contract, purchasing from Defendants, paying expenses, and other efforts necessary to the transactions. Plaintiff's reliance on Defendants' representations was justified because a reasonable person may be expected to believe such representations made by Defendants.

40.     Plaintiff detrimentally relied on Defendants' representations to be above-board and truthful in her dealings with defendant.

41.     As a proximate result of the fraudulent conduct, concealments, misrepresentations of Defendants as herein alleged Plaintiff has been and continues to be damaged, including without limitation economic injury, lost interest, and other general and special damages, including attorney fees, all in an amount to be proven at the time of trial.

42.     The aforementioned conduct of defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants thereby depriving Plaintiff of legal rights or otherwise causing injury, and was despicable conduct done with oppression, fraud and malice which subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff' rights, so as to justify an award of exemplary and punitive damages.

## FIFTH CAUSE OF ACTION
### FOR UNJUST ENRICHMENT
Against All Defendants

43.     Plaintiff realleges and incorporates by this reference each and all of the allegations contained in the foregoing paragraphs 1 through 42 as though fully set forth herein.

44.     As a direct and proximate result of Defendants' misrepresentations and concealments, Defendants were unjustly enriched at the expense of the Plaintiff.

45.     As a direct and proximate result of Defendants' actions and misrepresentations, Defendants have been unjustly enriched in an amount to be presented at trial according to proof.

**FIRST AMENDED COMPLAINT**

1

## PRAYER FOR RELIEF

2

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

3

ON THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION:

4

     1.    For compensatory damages and other special and general damages according to

5

proof but in excess of the jurisdictional threshold of this court;

6

     2.    For an award of interest, including pre-judgment interest, at the legal rate;

7

ON THE THIRD, FOURTH AND FIFTH CAUSES OF ACTION:

8

     3.    For a constructive trust for the amount of the proceeds to which Plaintiff is entitled;

     4.    For restitution of all moneys received by Defendants as a consequence thereof;

9

ON THE THIRD AND FOURTH CAUSES OF ACTION:

10

     5.    For punitive damages in an amount to be proved at time of trial;

11

ON ALL CAUSES OF ACTION:

12

     6.    For reasonable attorneys' fees;

13

     7.    For costs incurred herein;

14

     8.    For such other and further relief as this court may deem just and proper.

15

Dated:  January 22, 2014          LAW OFFICES OF JAMES B. KROPFF

16

                      LAW OFFICES OF EUN J. KWON

17

18

BY: _____

19

          James B. Kropff

          Attorneys for Plaintiff

          TAY JAEYEUN CHO

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

**PROOF OF SERVICE**

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of 18 and not a party to the within action; my business address is 283 So. Lake Ave., Suite 200, Pasadena, CA, 91101.

On January 22, 2014, I served the foregoing document described as:
FIRST AMENDED COMPLAINT
on the interested parties in this action:

John Eom, Esq.
Law Offices of John Eom
3600 Wilshire Blvd. Suite 702
Los Angeles, CA 90010
Fax: (213) 325-3028

LAW OFFICES OF EUN KWON, APLC
3700 Wilshire Blvd. Suite 405
Los Angeles, CA 90010
Fax: (213)480-0350

[X]    **VIA U.S. MAIL** - I deposited such envelope(s) with the United States Postal Service, enclosed in a sealed envelope, for collection and mailing with the United States Postal Service where it would be deposited for first class delivery, postage fully prepared, in the United States Postal Service that same day in the ordinary course of business.  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.

[ ]    **VIA FACSIMILE TRANSMISSION** - by use of facsimile machine, I served a copy of the document(s) on interested parties by transmitting by facsimile machine to said interested party.  The facsimile machine I used complied with California Rules of Court, and no error was reported by the machine.

[ ]    **VIA PERSONAL DELIVERY** – by personally delivering a true copy to an agent authorized to accept service at the business office/ place of hearing, addressed as follows:

Executed on **January 22, 2014** at Pasadena, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

DAVID L. ARMEN

---

**PROOF OF SERVICE**

# EXHIBIT 2

CALIFORNIA
ASSOCIATION
OF REALTORS®

# INDEPENDENT CONTRACTOR AGREEMENT
## (Between Broker and Associate-Licensee)
### (C.A.R. Form ICA, Revised 4/09)

is Agreement, dated __November 11, 2011__, is made between _____ __M & M Properties__ ("Broker") and

__Tay (Jayeun) Cho / Jayeun (Tay) Cho__ ("Associate-Licensee").

consideration of the covenants and representations contained in this Agreement, Broker and Associate-Licensee agree as follows:

**BROKER:** Broker represents that Broker is duly licensed as a real estate broker by the State of California, ☐ doing business as
_____ (firm name), ☐ a sole proprietorship, ☐ a partnership, or ☒ a corporation.
Broker is a member of the __Beverly Hills/Greater Los Angeles__
Association(s) of REALTORS®, and a subscriber to the __The MLS/CLAW__ Multiple
Listing Service(s). Broker shall keep Broker's license current during the term of this Agreement.
**ASSOCIATE-LICENSEE:** Associate-Licensee represents that: (i) he/she is duly licensed by the State of California as a ☐ real estate broker,
☒ real estate salesperson, and (ii) he/she has not used any other names within the past five years, except _____
_____ . Associate-Licensee shall keep his/her license current during
the term of this Agreement, including satisfying all applicable continuing education and provisional license requirements.

**INDEPENDENT CONTRACTOR RELATIONSHIP:**

A. Broker and Associate-Licensee intend that, to the maximum extent permissible by law: (i) This Agreement does not constitute an employment agreement by either party; (ii) Broker and Associate-Licensee are independent contracting parties with respect to all services rendered under this Agreement; and (iii) This Agreement shall not be construed as a partnership.

B. Broker shall not: (i) restrict Associate-Licensee's activities to particular geographical areas or, (ii) dictate Associate-Licensee's activities with regard to hours, leads, open houses, opportunity or floor time, production, prospects, sales meetings, schedule, inventory, time off, vacation, or similar activities, except to the extent required by law.

C. Associate-Licensee shall not be required to accept an assignment by Broker to service any particular current or prospective listing or parties.

D. Except as required by law: (i) Associate-Licensee retains sole and absolute discretion and judgment in the methods, techniques, and procedures to be used in soliciting and obtaining listings, sales, exchanges, leases, rentals, or other transactions, and in carrying out Associate-Licensee's selling and soliciting activities, (ii) Associate-Licensee is under the control of Broker as to the results of Associate-Licensee's work only, and not as to the means by which those results are accomplished, (iii) Associate-Licensee has no authority to bind Broker by any promise or representation and (iv) Broker shall not be liable for any obligation or liability incurred by Associate-Licensee.

E. Associate-Licensee's only remuneration shall be the compensation specified in paragraph 8.

F. Associate-Licensee who only performs as a real estate sales agent, shall not be treated as an employee for state and federal tax purposes. However, an Associate-Licencee who performs loan activity shall be treated as an employee for state and federal tax purposes unless the activity satisfies the legal requirements to establish an independent contractor relationship.

G. The fact the Broker may carry worker compensation insurance for Broker's own benefit and for the mutual benefit of Broker and licensees associated with Broker, including Associate-Licensee, shall not create an inference of employment.

**(Workers' Compensation Advisory:** Even though Associate-Licensees may be treated as independent contractors for tax and other purposes, the California Labor and Workforce Development Agency considers them to be employees for workers' compensation purposes. According to that Agency, (i) Broker must obtain workers' compensation insurance for Associate-Licensees and (ii) Broker, not Associate-Licensees, must bear the cost of workers' compensation insurance. Penalties for failure to carry workers' compensation include, among others, the issuance of stop-work orders and fines of up to $1,000 per agent, not to exceed $100,000 per company.)

4. **LICENSED ACTIVITY:** All listings of property, and all agreements, acts or actions for performance of licensed acts, which are taken or performed in connection with this Agreement, shall be taken and performed in the name of Broker. Associate-Licensee agrees to and does hereby contribute all right and title to such listings to Broker for the benefit and use of Broker, Associate-Licensee, and other licensees associated with Broker. Broker shall make available to Associate-Licensee, equally with other licensees associated with Broker, all current listings in Broker's office, except any listing which Broker may choose to place in the exclusive servicing of Associate-Licensee or one or more other specific licensees associated with Broker. Associate-Licensee shall provide and pay for all professional licenses, supplies, services, and other items required in connection with Associate-Licensee's activities under this Agreement, or any listing or transaction, without reimbursement from Broker except as required by law. Associate-Licensee shall work diligently and with his/her best efforts: (i) sell, exchange, lease, or rent properties listed with Broker or other cooperating Brokers; (ii) solicit additional listings, clients, and customers; and (iii) otherwise promote the business of serving the public in real estate transactions to the end that Broker and Associate-Licensee may derive the greatest benefit possible, in accordance with law. Associate-Licensee shall not commit any unlawful act under federal, state or local law or regulation while conducting licensed activity. Associate-Licensee shall at all times be familiar, and comply, with all applicable federal, state and local laws, including, but not limited to, anti-discrimination laws and restrictions against the giving or accepting a fee, or other thing of value, for the referral of business to title companies, escrow companies, home inspection companies, pest control companies and other settlement service providers pursuant to the California Business and Professions Code and the Real Estate Settlement Procedures Acts (RESPA). Broker shall make available for Associate-Licensee's use, along with other licensees associated with Broker, the facilities of the real estate office operated by Broker at __373 N. Western Ave #17, Los Angeles, CA 90004__
_____ and the facilities of any other office
locations made available by Broker pursuant to this Agreement.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1990-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
ICA REVISED 4/09 (PAGE 1 OF 3)

Broker's Initials (    )(    )
Associate-Licensee's Initials (    )(    )

Reviewed by _____ Date _____



## INDEPENDENT CONTRACTOR AGREEMENT (ICA PAGE 1 OF 3)

Agent:  James Lee                     Phone: (323)933-4412        Fax: (323)933-4417        Prepared using zipForm® software
Broker:  Hanmi Investment 4412 W Pico Blvd Los Angeles, CA 90019

**PROPRIETARY INFORMATION AND F...**    All files and documents pertaining to listings, t... , transactions are the property of Broker and shall be delivered to Broker by Associate-Licensee immediately upon request or termination of this Agreement. (B) Associate-Licensee acknowledges that Broker's method of conducting business is a protected trade secret. (C) Associate-Licensee shall not use to his/her own advantage, or the advantage of any other person, business, or entity, except as specifically agreed in writing, either during Associate-Licensee's association with Broker, or thereafter, any information gained for or from the business, or files of Broker.

**SUPERVISION:** Associate-Licensee, within 24 hours (or ☐ _____ ) after preparing, signing, or receiving same, shall submit to Broker, or Broker's designated licensee: (i) all documents which may have a material effect upon the rights and duties of principals in a transaction, (ii) any documents or other items connected with a transaction pursuant to this Agreement in the possession of or available to; Associate-Licensee and; (iii) all documents associated with any real estate transaction in which Associate-Licensee is a principal.

**TRUST FUNDS:** All trust funds shall be handled in compliance with the Business and Professions Code, and other applicable laws.

**COMPENSATION:**

A. **TO BROKER:** Compensation shall be charged to parties who enter into listing or other agreements for services requiring a real estate license:
   ☐ as shown in "Exhibit A" attached, which is incorporated as a part of this Agreement by reference, or
   ☒ as follows: _Compensation shall be charged to parties who enter into a listing or other agreements_ _for services requiring a real estate license as shown in paragraphs 4 which is incorporated_ _as a part of this Agreement._
   Any deviation which is not approved in writing in advance by Broker, shall be: (1) deducted from Associate-Licensee's compensation, if lower than the amount or rate approved above; and, (2) subject to Broker approval, if higher than the amount approved above. Any permanent change in commission schedule shall be disseminated by Broker to Associate-Licensee.

B. **TO ASSOCIATE-LICENSEE:** Associate-Licensee shall receive a share of compensation actually collected by Broker, on listings or other agreements for services requiring a real estate license, which are solicited and obtained by Associate-Licensee, and on transactions of which Associate-Licensee's activities are the procuring cause, as follows:
   ☐ as shown in "Exhibit B" attached, which is incorporated as a part of this Agreement by reference, or
   ☒ other: _Commission split shall be 90%, unless specified otherwise according to Transaction_ _Commission Agreement._    _From Gross Commission_

C. **PARTNERS, TEAMS, AND AGREEMENTS WITH OTHER ASSOCIATE-LICENSEES IN OFFICE:** If Associate-Licensee and one or more other Associate-Licensees affiliated with Broker participate on the same side (either listing or selling) of a transaction, the commission allocated to their combined activities shall be divided by Broker and paid to them according to their written agreement. Broker shall have the right to withhold total compensation if there is a dispute between associate-licensees, or if there is no written agreement, or if no written agreement has been provided to Broker.

D. **EXPENSES AND OFFSETS:** If Broker elects to advance funds to pay expenses or liabilities of Associate-Licensee, or for an advance payment of, or draw upon, future compensation, Broker may deduct the full amount advanced from compensation payable to Associate-Licensee on any transaction without notice. If Associate-Licensee's compensation is subject to a lien, garnishment or other restriction on payment, Broker shall charge Associate-Licensee a fee for complying with such restriction.

E. **PAYMENT:** (i) All compensation collected by Broker and due to Associate-Licensee shall be paid to Associate-Licensee, after deduction of expenses and offsets, immediately or as soon thereafter as practicable, except as otherwise provided in this Agreement, or a separate written agreement between Broker and Associate-Licensee. (ii) Compensation shall not to be paid to Associate-Licensee until both the transaction and file are complete. (iii) Broker is under no obligation to pursue collection of compensation from any person or entity responsible for payment. Associate-Licensee does not have the independent right to pursue collection of compensation for activities which require a real estate license which were done in the name of Broker. (iv) Expenses which are incurred in the attempt to collect compensation shall be paid by Broker and Associate-Licensee in the same proportion as set forth for the division of compensation (paragraph 8(B)). (v) If there is a known or pending claim against Broker or Associate-Licensee on transactions for which Associate-Licensee has not yet been paid, Broker may withhold from compensation due Associate-Licensee on that transaction amounts for which Associate-Licensee could be responsible under paragraph 14, until such claim is resolved. (vi) Associate-Licensee shall not be entitled to any advance payment from Broker upon future compensation.

F. **UPON OR AFTER TERMINATION:** If this Agreement is terminated while Associate-Licensee has listings or pending transactions that require further work normally rendered by Associate-Licensee, Broker shall make arrangements with another associate-licensee to perform the required work, or Broker shall perform the work him/herself. The licensee performing the work shall be reasonably compensated for completing work on those listings or transactions, and such reasonable compensation shall be deducted from Associate-Licensee's share of compensation. Except for such offset, Associate-Licensee shall receive the compensation due as specified above.

9. **TERMINATION OF RELATIONSHIP:** Broker or Associate-Licensee may terminate their relationship under this Agreement at any time, with or without cause. After termination, Associate-Licensee shall not solicit: (i) prospective or existing clients or customers based upon company-generated leads obtained during the time Associate-Licensee was affiliated with Broker; (ii) any principal with existing contractual obligations to Broker; or (iii) any principal with a contractual transactional obligation for which Broker is entitled to be compensated. Even after termination, this Agreement shall govern all disputes and claims between Broker and Associate-Licensee connected with their relationship under this Agreement, including obligations and liabilities arising from existing and completed listings, transactions, and services.

Broker's Initials _____ ( ✗ )( 9K )
Associate-Licensee's Initials ( ⊘ )( )
Reviewed by _____ Date _____

Copyright © 1990-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**ICA REVISED 4/09 (PAGE 2 OF 3)**



EQUAL HOUSING OPPORTUNITY

**INDEPENDENT CONTRACTOR AGREEMENT (ICA PAGE 2 OF 3)**

Independent

0. **DISPUTE RESOLUTION:**

A. **Mediation:** Mediation is recommended ........ ethod of resolving disputes arising out of this ₐ ........ nt between Broker and Associate-Licensee.

B. **Arbitration:** All disputes or claims between Associate-Licensee and other licensee(s) associated with Broker, or between Associate-Licensee and Broker, arising from or connected in any way with this Agreement, which cannot be adjusted between the parties involved, shall be submitted to the Association of REALTORS® of which all such disputing parties are members for arbitration pursuant to the provisions of its Bylaws, as may be amended from time to time, which are incorporated as a part of this Agreement by reference. If the Bylaws of the Association do not cover arbitration of the dispute, or if the Association declines jurisdiction over the dispute, then arbitration shall be pursuant to the rules of California law. The Federal Arbitration Act, Title 9, U.S. Code, Section 1, et seq., shall govern this Agreement.

1. **AUTOMOBILE:** Associate-Licensee shall maintain automobile insurance coverage for liability and property damage in the following amounts $ _____ /$ _____ . Broker shall be named as an additional insured party on Associate-Licensee's policies. A copy of the endorsement showing Broker as an additional insured shall be provided to Broker.

2. **PERSONAL ASSISTANTS:** Associate-Licensee may make use of a personal assistant, provided the following requirements are satisfied. Associate-Licensee shall have a written agreement with the personal assistant which establishes the terms and responsibilities of the parties to the employment agreement, including, but not limited to, compensation, supervision and compliance with applicable law. The agreement shall be subject to Broker's review and approval. Unless otherwise agreed, if the personal assistant has a real estate license, that license must be provided to the Broker. Both Associate-Licensee and personal assistant must sign any agreement that Broker has established for such purposes.

3. **OFFICE POLICY MANUAL:** If Broker's office policy manual, now or as modified in the future, conflicts with or differs from the terms of this Agreement, the terms of the office policy manual shall govern the relationship between Broker and Associate-Licensee.

4. **INDEMNITY AND HOLD HARMLESS; NOTICE OF CLAIMS:** A. Regarding any action taken or omitted by Associate-Licensee, or others working through, or on behalf of Associate-Licensee in connection with services rendered or to be rendered pursuant to this Agreement: (i) Associate-Licensee agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, awards, costs and attorney's fees, arising therefrom and (ii) Associate-Licensee shall immediately notify Broker if Associate-Licensee is served with or becomes aware of a lawsuit or claim regarding any such action. B. Any such claims or costs payable pursuant to this Agreement, are due as follows:

☒ Paid in full by Associate-Licensee, who hereby agrees to indemnify and hold harmless Broker for all such sums, or

☐ In the same ratio as the compensation split as it existed at the time the compensation was earned by Associate-Licensee

☐ Other: _____

_____

_____

Payment from Associate-Licensee is due at the time Broker makes such payment and can be offset from any compensation due Associate-Licensee as above. Broker retains the authority to settle claims or disputes, whether or not Associate-Licensee consents to such settlement.

5. **ADDITIONAL PROVISIONS:** _____

_____

_____

6. **DEFINITIONS:** As used in this Agreement, the following terms have the meanings indicated:

(A) "Listing" means an agreement with a property owner or other party to locate a buyer, exchange party, lessee, or other party to a transaction involving real property, a mobile home, or other property or transaction which may be brokered by a real estate licensee, or an agreement with a party to locate or negotiate for any such property or transaction.

(B) "Compensation" means compensation for acts requiring a real estate license, regardless of whether calculated as a percentage of transaction price, flat fee, hourly rate, or in any other manner.

(C) "Transaction" means a sale, exchange, lease, or rental of real property, a business opportunity, or a manufactured home, which may lawfully be brokered by a real estate licensee.

7. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Broker and Associate-Licensee arising from or related to this Agreement, the prevailing Broker or Associate-Licensee shall be entitled to reasonable attorney fees and costs.

8. **ENTIRE AGREEMENT:** All prior agreements between the parties concerning their relationship as Broker and Associate-Licensee are incorporated in this Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final and complete expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be amended, modified, altered, or changed except by a further agreement in writing executed by Broker and Associate-Licensee.

Broker:

J & M Properties, Inc.
Brokerage firm name)
By _____
ts ☒ Broker ☐ Office manager (check one)

James Lee / Grace Kuh (Owner)
(Print name)

373 N. Western Ave #17
(Address)

Los Angeles, CA, 90004
(City, State, Zip)

(866) 382-7272
(Telephone)                    (Fax)

Associate-Licensee:

_____
(Signature)

Tay (Jaeyeun) Cho
(Print name)

1043 S. Kenmore Ave #405
(Address)

Los Angeles, CA 90006
(City, State, Zip)

(213) 925-3309
(Telephone)                    (Fax)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
■ 525 South Virgil Avenue, Los Angeles, California 90020

ICA REVISED 4/09 (PAGE 3 OF 3)

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

**INDEPENDENT CONTRACTOR AGREEMENT (ICA PAGE 3 OF 3)**

Independent